United States District Court
for the
Southern District of Florida

| General Property Construction Co., | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 18-23688-Civ-Scola |
| | ) | |
| Empire Office, Inc., Defendant. | ) | |

## Omnibus Order

This action involves a contract dispute on a construction project between a subcontractor General Property Construction Co. ("General Property") and a sub-subcontractor Empire Office, Inc. ("Empire"). Now before the Court is Empire's motion for summary judgment (**ECF. No. 48**) and General Property's amended motion to strike Empire's filings in support of its motion for summary judgment (**ECF No. 52**). After careful review of the relevant record in this case, the Court **denies** both motions.

The Court notes that since Empire filed its motion for summary judgment, General Property withdrew its claims for one-month lost wages and lost profits totaling $1,732,784.07. (ECF No. 57.) Empire's argument that General Property cannot recover lost profits is denied as moot, and General Property can no longer pursue those claims.

**1. Background**

This case concerns a contract dispute on a construction project called the Miami World Center Paramount, a luxury 57-story condominium complex. The general contractor and Empire, the subcontractor, agreed that Empire would perform a portion of the work. (ECF No. 42-10.)

General Property and Empire were in the process of negotiating a written sub-subcontract that was never signed. (ECF Nos. 54 at ¶11; 42-7 at 84.) The sub-subcontract stated that General Property was to furnish construction labor and materials relating to the installation of the bathrooms for the Paramount project. (ECF No. 42-2.) No evidence in the record suggests that a final version of the sub-subcontract was ever signed. (ECF No. 42-7 at 86.) The parties agree, and the record supports, that the parties had some sort of oral agreement. (ECF Nos. 48 at ¶14; 55 at ¶14.) Empire contends that General Property agreed to adhere to its proposal, the agreed schedule of values, and the scope of work in exchange for payment. (ECF Nos. 48 at ¶14; 43-1 at ¶ 6.) General Property contends that

the parties verbally agreed to the contents of the sub-subcontract even though it was never formally signed. (ECF Nos. 55 at ¶ 14; 42-7 at 101.)

On October 2, 2017 General Property began working on the project. The general contractor considered at least some of General Property's work to be "unacceptable." (ECF No. 42-6 at 12.) For example, the general contractor complained that the floor tiles "are not level and inconsistent" and that the wall tiles were not aligned properly. (ECF No. 42-6 at 12.) As a result, corrective work was needed. The shower wall and bathroom floor tiles needed to be re-installed with a full mud set because they were initially installed with "spot setting." (ECF No. 42-6 at 16.)

General Property submitted ten invoices to Empire between October 2, 2017 and March 21, 2018 for a total invoiced amount of $848,983.91. (ECF No. 43-13 at No. 2.) Empire paid General Property $673,776.92, and General Property executed releases for these payments through February 26, 2018. All that remain are two invoices: one from March 1, 2018 and another from March 21, 2018 totaling $186,061.75. (ECF No. 42-13 at No. 10.)

On March 23, 2018, Empire fired General Property from the project via email. (ECF No. 42-6 at 31.) No reason for the termination was given in the email. *Id.* As a result, General Property filed suit claiming that Empire breached their contract by wrongfully terminating it from the project. General Property completed 19.26% of the project before termination. (ECF No. 12-7 at 171.) General Property claims $186,061.45, the total of the two outstanding invoices, and $17,367.75 in unpaid retainage. (ECF No. 42-13 at No. 10.)[1] Empire counterclaimed against General Property for breach of contract and negligence.

Empire's motion for summary judgment sets forth four arguments: (1) General Property did not substantially complete the sub-subcontract before it was removed from the project and thus cannot recover damages; (2) Empire complied with the contract by properly giving General Property notice of its breaches before termination; (3) consequential damages are not recoverable because General Property has no evidence of actual costs; and (4) General Property's claim to future payroll is baseless. (ECF No. 48.) Arguments three and four are moot because General Property withdrew its claim for lost profits and lost wages. (ECF No. 57.)

In its response, General Property argues that (1) Empire's documents filed in support of its motion for summary judgment should be stricken; (2) Empire's failure to raise waiver of consequential damages as an affirmative defense means

---

[1] General Property withdrew its claims for lost profits totaling $1,732,784.07 and for lost wages totaling $69,029.26 in its notice of withdrawal of certain claims on June 26, 2019. (ECF No. 57).

that it cannot be argued now; (3) there was an oral contract; (4) General Property is entitled to lost profits because they need not be proven with absolute exactness. (ECF No. 56.) General Property additionally filed an amended motion to strike re-stating argument one. (ECF No. 52.) As described above, arguments two and four are moot because General Property withdrew those damages claims. (ECF. No. 57.)

### 2. Legal Standard

Under Federal Rule of Civil Procedure 56, "summary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to a judgment as a matter of law.'" *Alabama v. North Carolina*, 130 S. Ct. 2295, 2308 (2010) (quoting Fed. R. Civ. P. 56(a)). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir.2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323–24. The nonmovant's evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court will not weigh the evidence or make findings of fact. *Anderson*, 477 U.S. at 249; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the nonmoving party. *Id.*

### 3. Argument

#### A. General Property's Motion to Strike

Before addressing Empire's summary judgment arguments, the Court must first resolve General Property's motion to strike, which seeks to remove several documents from the record. General Property moves the Court to strike Magistrate Judge Torres's discovery order (ECF No. 39), Empire's expert disclosures (ECF Nos. 44, 44-1), Empire's filing of source material (ECF No. 47-1), and the exhibits to Martin Hill's affidavit (ECF Nos. 42-2, 42-3, 42-4, 42-5,

42-6.) Magistrate Judge Torres's discovery order (ECF No. 39) and Empire's expert disclosures (ECF Nos. 44, 44-1) offer no support for Empire's material assertions in its summary judgment motion, and thus the Court will not consider them for summary judgment purposes. But the Court will not strike them from the record.

More critically, *General Property argues that* several of *Empire's filings were not* properly attached *to or authenticated by an affidavit and must be stricken. The Court declines to strike these documents because they* can *be submitted in admissible form at trial.* On a motion for summary judgment, a party should support its assertions by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). *Otherwise admissible* evidence can "be submitted in *inadmissible form* at the summary judgment stage, though at trial it must be submitted in admissible form." *McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir. 1996). Thus, "although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible, the material may be presented in a form that would not, in itself, be admissible at trial." *National Union Fire Ins. Co. of Pittsburgh v. All American Freight, Inc.*, 2016 WL 633710, *6 (S.D. Fla. 2016) (unauthenticated documents can be considered at summary judgment because they could be reduced to an admissible form at trial.).

There is no indication that the documents, Empire's source materials (ECF No. 47-1) and the exhibits to Martin Hill's affidavit, are incapable of authentication and admission at trial. Accordingly, the Court declines to strike them and will consider them for the purposes of summary judgment.

### B. Substantial completion

Empire argues that because General Property completed only 19.26% of the project, General Property did not substantially complete the contract and "is not entitled to enforce its contract rights and recover damages." (ECF No. 48 at 12-13.)

Construction contracts are generally subject to the doctrine of substantial performance. Substantial performance is "performance of a contract which, while not full performance, is so nearly equivalent to what was bargained for that it would be unreasonable to deny the promise the full contract price." *Ocean Ridge Dev. Corp. v. Quality Plastering, Inc.*, 247 So. 2d 72, 75 (Fla. 4th DCA 1971). In other words, a subcontractor who substantially performs its obligations under the contract is entitled to the full price of the contract minus the remainder of the cost incurred by the owner to complete the contract.

Empire's reliance on this doctrine is misplaced. General Property does not claim that it is entitled to the total amount of the sub-subcontract, either $5,506,302 if the unsigned document controls as General Property claims or $5,700,000 if the proposal controls as Empire claims. (ECF Nos. 42-2, 52-5.) General Property cannot be precluded from claiming damages for breach of contract by the substantial completion doctrine. *See Puya v. Superior Pools, Spas & Waterfalls, Inc.*, 902 So. 2d 973, 976 (Fla. 4th DCA 2005) ("The measure of damages for breach of a partially performed construction contract is…the contractor's lost profit together with the reasonable cost of labor and materials incurred in good faith in the course of partial performance of the contract.").

### C. Wrongful termination

Empire contends that it issued written notice of General Property's repeated material breaches of their agreement and thus properly terminated General Property. Empire alleges, without citing to any specific document, that "Empire served numerous notices to GPC of problems with its work and GPC never…corrected it." (ECF No. 48 at 14.) Both the proposal and the unsigned sub-subcontract contain the same termination requirements:

> 11.3. TERMINATION BY SUBCONTRACTOR If Subsubcontractor fails to commence and satisfactorily continue correction of a default within three (3) business Days after written notification issued under section 11.1, then Subcontractor may, in lieu of or in addition to section 11.1, issue a second written notification, to Subsubcontractor. Such notice shall state that if Subsubcontractor fails to commence and continue correction of a default within seven (7) Days of the written notification, the Agreement will be deemed terminated. A written notice of termination shall be issued by Subcontractor to Subsubcontractor at the time Subsubcontractor is terminated.

ECF No. 42-2 at 17, 1-5 at 6. If Empire complied with the above termination provision, then General Property is liable for costs incurred by Empire in performing General Property's work minus the amount due to General Property. ECF No. 42-2 at 17, 1-5 at 6.

Between December 2017 and February 2018, Empire sent numerous emails to General Property regarding the project. (ECF No. 42-6.) Most of the emails merely instruct General Property on open items that need to be completed. On February 15, 2018, an Empire employee emailed two pictures of the shower walls, and stated "[t]his is not proper coverage for installation and warranty." (*Id.* at 10.) An email sent on February 19, 2018 states that "General Properties needs to provide me with a plan, tomorrow, otherwise Empire will have

to take action to prevent [the general contractor] from taking it out of our hands." (*Id.* at 12.)

Whether these emails constitute sufficient notice to comply with the contract's termination provision is, at minimum, an issue of fact that the Court cannot determine at this stage. Notably, the email does not say that if General Property "fails to commence and continue correction of a default within seven (7) Days of the written notification, the Agreement will be deemed terminated" as required by the contract. And, in any event, the record demonstrates an issue of material fact whether General Property failed to "commence and continue correction of a default" within the time limits proscribed by the contract. Accordingly, the Court **denies** the motion (**ECF No. 48.**)

**Done and ordered** at Miami, Florida on September 4, 2019.

Robert N. Scola, Jr.
United States District Judge